This is a Title IX case that I think probably turns mainly on the issue of deliberate indifference and how that is defined with respect to the facts in front of us. We have a case in which a minor in middle school engaged in a pattern of conduct that for years was disruptive, disorderly, many years of misconduct. And he then wrote several very inappropriate sexually explicit letters directed towards my client. How old was this young man at the time they were both in 6th grade? They are, I believe, 13 to 14 at the time. Both of them were? Yes. 6th grade, when normally you're like 11, right? It could be 12. It's middle school years. I don't have their exact ages right now, but they are in middle school. Well, they're 6th grade is what we were told. Yes. Okay. And the letters were very sexually explicit with respect to engaging in sexual activities. They were directed to my client, and there is some, I think, dispute. I didn't know that. I'm sorry? I said the police didn't explain. What was BAE? Was that how you knew this was BS? The first letter was directed to my BAE with my client's name, and the second letter was directed to BAE. So, I mean, how do you know he couldn't have changed his affections to some other BAE? I don't know what BAE means. It is a slang term, Your Honor, for someone that you can say. Babe, boo, girlfriend, I like you. Yes. Okay. But, I mean, so it didn't have BS's name. That's my only point. The second letter did not. The first letter did. Okay. In any event, the action that the school chose to take was, in the first instance, for in-school suspension. And the second instance was out-of-school suspension. But the school took no action to notify my client's mother or father, and didn't take any action to separate the two students. And what it resulted in was an after-school activity in which my client was playing volleyball, and this young man was unsupervised at the after-school game, at the volleyball game, at which both the vice principal and the principal saw him and interacted with him and were aware that my client was playing volleyball, although they didn't see her specifically. But they took no action other than to tell him, you need to leave. And that was it. And, of course, he didn't leave. He then sexually assaulted my client in the restroom at the school. So the district court in this case found a number of things with which, of course, we take issue. Let me back up for a moment. So your complaint is that as a result of the first letter, your client's parents should have been contacted. Yes, sir. They should have at least had the opportunity to address the situation with my client. And the failure to contact her parents equals deliberate indifference. Is that your contention? Yes, sir. That along with the fact they didn't notify her parents, they didn't do anything to separate the two, and when they encountered him. But they gave the author of the letter an in-school suspension. Yes, sir. As a result of the first letter. Yes, sir. All right. Well, and your client, she was asked about the first letters, and she denied having received them. Did she not? Yes, she did. Yes, she did. But, you know, I do understand that she denied having received them, and I don't know, in fact, whether she did or didn't, but I don't think you could really expect a middle school student to understand the ramifications of addressing that issue or whether or not they might just be afraid to fess up and tell the truth and talk about any kind of a relationship that they're having with a young man in middle school. So she did deny receiving them. There's no evidence that she did other than the boxes saying, you know, do you want to have sex with me, check yes or no, were actually checked. But the letters were taken up from this young man's desk at school. So they were taken up and kept by the administrators at the school. However, there was no opportunity for my client's mother to intervene, to do anything to address the situation, to talk to her about it, to take any action at all. And then when they saw him, they knew that this young man had a history of lying, of not responding to discipline. They had years of corrective action that had no effect on him whatsoever. And they, in fact, told him after the first letter, don't write any more letters like this. And he wrote the second letter within, I believe, two weeks after being suspended and told not to write another one. He then wrote the second one, which they found. There may have been others. Who knows? But it was within, I believe, five days of the second letter that the sexual assault occurred. So, obviously, whatever discipline they were meeting out had no effect on him whatsoever. But I think there are several things that take this case out of the purview of other cases where they have found no deliberate indifference. One of them being they had literal, specific, direct intent for this young man to sexually assault my client. If this had been a letter where a young man had written, I'm going to come to school and kill you, I'm going to come and shoot you, and they had taken no action, and the kid came to school and brought a gun and killed somebody, I think that there would be no question as to whether or not the school had acted inappropriately and allowed something terrible to occur. The fact that this was a sexual assault shouldn't make it any different. And, I mean, it's just as terrible, it's just as horrible, and the intent was just as clear. So I think that the district court basically said that there was no evidence that the principal and the vice principal actually drew an inference that there was a substantial risk to my client, which, you know, in any case, an administrator can say, well, I didn't actually know he was going to hurt her. I don't think that's the standard. And I think the Rosa case, for example, talks about what the court needs to look at to determine whether or not What's your best case on the fact for finding deliberate indifference here? Because we've had a whole bunch of cases about sexual assaults of various kinds in the school, many different factual situations. I assume you reviewed many of those. What's your best one? Well, with respect to the deliberate indifference definition and standard, Your Honor, I think it's Rosa v. San Eliseano School District. I'm talking about the fact. The fact. Well, I mean, I don't know that there is a case that is specifically on point with the facts, but I would argue that the U.S. Supreme Court Davis case is very similar in facts, where in that case the Davis v. Monroe County Board of Education, it was a fifth grader who said things such as I want to get in bed with you and made other sexually inappropriate comments and rubbed up against her. And the court found that the school had had the authority to take remedial action and failed to do so. And I think that factually that's a very similar case. But didn't they distinguish between negligence and deliberate indifference? Yes. And, yes, Your Honor, they did. And I believe that this case meets the standard of deliberate indifference. And I think that the deliberate indifference standard was actually addressed in detail and in more depth in the Rosa case where they said that it occurs when a school chooses not to alleviate a known danger. And so the danger in the present case was obviously known since it was a specific and direct threat. And the school chose, particularly when they encountered the young man at the volleyball game, not to alleviate the danger. Whether or not the earlier discipline was appropriate or inappropriate or effective or ineffective, it was obviously ineffective, I think that the culmination of all of this. Hold on a second. You're saying they chose at the game not to alleviate the danger? Is that what you're saying? Yes, Your Honor. So before that, what they did was appropriate? I don't believe so. But I think that they did something. They didn't do nothing. But there are also other cases where the school chose to do something and the court still found that it met the standard of deliberate indifference. So just because they did something doesn't mean that they weren't deliberately indifferent. But I think even if getting past that, at the volleyball game, they did absolutely nothing. I mean, they said go home. But they didn't. They told him to go sit in the bleachers and then go home until someone came to pick him up. Yes, Your Honor, they did. It was unsupervised. It wasn't because they considered him a threat, at least the way I read the brief. But he deliberately violated their instructions, did he not? Yes, they instructed him to leave. However, at the time they encountered him, they knew a number of things about him, including that he was a liar, that he was disruptive, that he didn't follow instructions, and that he was likely not to follow that instruction. And so simply saying, hey, go home, and leaving, and leaving him there knowing that he's unsupervised and shouldn't be there, was deliberate indifference, particularly in light of the fact that he had made specific threats of sexual assault. I don't mean to be too crude, but is there any evidence that he pulled the young lady into the boy's restroom where this assault occurred? He picked her up, Your Honor, and carried her in there. With a group of kids, though, right? No. At the time that he picked her up and carried her into the restroom, they were in the hallway. But nobody screamed or yelled or anything? No, Your Honor. There was no screaming or yelling at that time. But, Your Honor, I would contend that a girl of those tender years really can't consent to that kind of conduct. So whether or not she yelled or screamed or fought, I don't think is particularly relevant to whether or not a sexual assault occurred. There is, I don't think, any dispute that there was sexual activity going on. Whether or not she fought against that or didn't may be in dispute, but in my opinion isn't relevant to whether or not a sexual assault occurred. Well, Your Honor, I would submit that they had two letters of his specific sexual intent to engage in sexual, anal, and oral intercourse with her. He literally said, I am going to do these things to you. So I don't know how much more specific intent could be relayed other than saying I'm going to do this, which he did. And they were, both the principal and vice principal, were aware of the letters. They were aware of the intent and they were aware of his history and his behavior and that he didn't belong at the game, that he was unsupervised there. And this all occurred in a matter of weeks between the letters and them encountering him at the volleyball game. So in that respect, we think that there is substantial evidence, particularly in this case, of deliberate indifference. And I think that that's probably the crux of the issue with respect to the district court's opinion in this case. I don't think anyone disagrees that his conduct was reprehensible. But what we're talking about is whether or not the school district was deliberately indifferent. And so my question again, I guess, is what should they have done that would have been sufficient and would have negated any claim of deliberate indifference? And so upon review of the first letter, they should have conferred with her parents. Yes, sir. And so let's say they talk to her mother and her mother say, I'll talk to her and tell her she needs to stay away from him and be careful and all the other warnings parents give to their children. I don't know what else would have happened. But then the second letter, which doesn't include her name but is addressed to May, but it's a similar letter. So what should the school district have done if I received a second letter? What do you think would have been appropriate? Your Honor, I think there are a number of things that would have been appropriate. Notifying the parents, possibly contemplating putting him in an alternative situation or in a different school, and definitely making sure that the two didn't cross paths, particularly at the volleyball game when they're both unsupervised in the hallway.  Yes, sir. But I'm saying when they got the second letter, they should have put him out of school permanently. They did an out-of-school suspension upon review of the second letter. Is that right? Yes, sir. But they should have expelled him. Or an alternative placement, Your Honor, where he didn't have to be expelled from school, but he could go to a different situation where there would be more supervision and closer scrutiny. And it would separate him from my client physically. Thank you. May it please the Court. I am Bridget Robinson representing the Crowley Independent School District. Your Honors, in this case, the District Court properly granted summary judgment for the Crowley Independent School District. The District Court applied the correct legal standards, thoroughly considered the undisputed summary judgment evidence, and properly determined that appellant failed to raise a genuine issue of material fact to support her Title IX claim. The District Court correctly concluded that first, appellant did not, pardon me, the school district did not have actual knowledge of harassment or a substantial risk of serious harm to appellant. And second, that the school district did not act with deliberate indifference with respect to AR's disciplinary history, the two school notes, or its handling of the bathroom incident. Additionally, although the Court declined to address the issue of discrimination, it is clear from the undisputed summary judgment evidence that the school district did not engage in intentional discrimination that deprived appellant of access to an educational opportunity. For any one of those three reasons, appellant's case fails, and this Court should affirm the summary judgment in favor of the school district. Beginning with plaintiff's, appellant's, in this Court, failure to establish actual knowledge, it is clear from the record that there was no school district official who was aware of facts from which an inference could be drawn that a substantial risk of serious harm existed, and that the official actually drew that inference. This Court's precedent in Rosa H. v. San Olivario Independent School District requires both prongs to be met to create a genuine issue of material fact. Plaintiff made neither showing in this case. As you heard here today, appellant herself concedes that the school district took action each time there was an incident involving AR. Appellant also concedes and included in her brief AR's disciplinary history and told you again today that he engaged in disruptive behavior, disorderly conduct, and other disciplinary infractions such as refusing to follow teacher's directions. None of those disciplinary incidents put the Crowley Independent School District on notice that there was a sexual predator on the loose who might attack a student at any moment. This case, in fact, is very similar to the Snevin v. Board of Public Education case in which even though the student had an extensive disciplinary history, and in that case, even though the student had touched a female student's breasts and called both her and many other students things such as whore, hoe, and bitch on numerous occasions described in the opinion as being his common practice, the court found that there was no actual notice that a sexual predator was on the loose. The same is true in this case, and the trial court considered appellant's theory and correctly concluded that it was not reasonable to expect the school to conclude from this record that AR would or could sexually assault another student. In fact, if you read the court's decision on page 480 of the record on appeal, the district court performed an analysis of his entire disciplinary history and found that even though AR's disciplinary history was extensive, other than the two notes, the only disciplinary infractions over four school years, which plaintiff included in her brief, being the 2011-2012 school year, the 2012-2013 school year, the 2013-2014 school year, and the 2014-2015 school year at issue in this case, there were only two incidents that could even be remotely characterized as sexual in nature. The first was writing a note to another student about kissing a boy in September 2013, well over a year before this incident, which had nothing to do with even kissing him. It was basically teasing a student for kissing another boy. The second was calling another student a prostitute in September 2014. Even though if you characterize those two disciplinary infractions, which constituted disrespect and derogatory verbal statements and were punished as such to be sexual, it is clear that the school district did impose consequences, disciplined AR, and moreover, the school district continued to follow its discipline matrix in imposing progressive consequences where for any infraction in any school year, there were greater consequences imposed for each infraction. So plaintiff herself, in argument today, basically conceded that the school district was not deliberately indifferent when she said the school engaged in years of corrective action. As this court has held numerous times, deliberate indifference is a much higher standard than negligence or even unreasonableness. Even if you second-guess the actions taken by a school district, if there was some action taken, even if it was ultimately ineffective in mitigating the harm or obviating the harassment, the school district cannot be found to have been deliberately indifferent. But counsel, you don't mean that... You're saying if some action was taken, then the school district could not be found to be deliberately indifferent. So let's say after 10 infractions, they just call him in and they talk to him again. Every time there's an infraction, he meets with the school counselor. Nothing else, but he met with the counselor and the counselor talked to him. That's taking some action, isn't it? Your Honor, as long as the action is not objectively unreasonable. If it were objectively unreasonable... But it can't be as general as any time the school district takes some action, then they can't be found to be deliberately indifferent. Yes, Your Honor. It has to be reasonable action. But I think the record in this case clearly establishes, and the district court properly found, that the actions taken by the school district in this case were reasonable, not only because the school district applied consequences that were consistent with its discipline matrix, but also because the school district even prior... When you say consistent with the discipline matrix, you mean they have a matrix which says for this category of offense, then this is the punishment that we impose? That is correct, Your Honor. And the reason for that discipline matrix... It doesn't necessarily have to be some progressive, gradual discipline in terms of severity. In other words, you could go from no infractions to expulsion with one event, couldn't you? If it were a serious infraction, yes, Your Honor. And the discipline matrix takes that into consideration. It takes into consideration both the seriousness of the offense and the number of disciplinary offenses. So, for example, in this particular case, A.R. received greater consequences for engaging in the same conduct because one would be a first infraction and one would be a second infraction. Take, for example, the two letters or two notes that appellant claims should have put the school district on notice and which they handled in a way that she characterizes as being deliberately indifferent. For the first note which was found, which the court correctly noted had 2B and it did not have appellant's full name on the letter. It only had her first name. If you generously read and try to discern the penmanship, although the letter actually looked like it was written to my bae, D.B.M.I. And that characterization is in the record on appeal at page 516 of the summary judgment hearing transcript with which characterization appellant took no issue that it does actually look like 2B, D.B.M.I. The second letter or note was only addressed to bae. But because the school district tried to discern what did that D.B.M.I. mean, they interviewed students whose names were anything similar to that, including plaintiff in this case. The reason that appellant's mother was not contacted is because when the assistant principal talked to appellant and asked her if she had received any unwanted attention from anyone, she said no. He asked her had she been uncomfortable or had anyone made her uncomfortable in any way. She said no. He asked her if she had received any notes or letters from any other students. She said no. He asked her if she felt like she had been harassed by any other students. She said no. He asked her if there was anything that made her feel that someone was showering her with attention or affection that was unwanted. And she said no. He asked her if there was anything that happened that made her feel uncomfortable in any way to please talk to him or the school counselor, Ms. Thompson, and she said she would. But it's uncontroverted that appellant never spoke with anyone and never claimed to anyone she was uncomfortable in any way because the district did everything it could to determine whether appellant was actually the target of that first letter, which did not threaten a sexual assault. Rather, it inquired about willingness to engage in consensual sexual conduct and said things such as I need another kiss but longer and do you still want to suck my slang for private part with a box for yes or no in which the yes box was checked and then also had a question, do you still want to ride my slang for private part with another box for yes or no in which the yes box was checked. There was no indication that a sexual assault was attended. Rather, it was a query regarding consensual sexual conduct. Appellant, in her argument before the district court, in her brief before this court, and again here today, told this court, well, it's reasonable to expect that a student involved in a relationship with another student might not want to admit that to school administrators. However, if appellant's theory is correct and her client actually was the person who received the letters, even though all of the summary judgment evidence, including her own deposition testimony, was that she never saw the letters, never read any notes or letters, didn't check any boxes, and didn't even care about any notes and certainly knew nothing about them, they were never delivered to her, which the school district confirmed, then that would actually establish more reason for the district court's granting of summary judgment in favor of the school district because it would clearly show that this was a consensual sexual activity, albeit between minors. Obviously, the school district cannot alter the fact that adolescents enter puberty and are flooded with new hormones, which often cause students to desire to begin dating and sometimes even engage in consensual sexual activity. Looking at the record as a whole, though, even if you believe appellant's deposition testimony that she never saw the letters, that they were never delivered to her and she did not check the boxes, yes, that were checked on the letters, all of the other summary judgment evidence establishes that it does appear this was a consensual sexual activity between these two students. Ms. Robinson, I'll ask you the same question I asked Ms. Hutchinson. How old were these kids? AR was 12, Your Honor, and DS, the appellant, had a birthday a little later in the school year, so she was not quite 12 at the time, Your Honor. Okay, thank you. Yes, Your Honor. It's interesting, though, that one of the things that appellant claims in this case is that the students should have been separated when the evidence is clear even from appellant's own deposition testimony that they were separated. In fact, they were never in class together, which appellant herself admitted at page 825 of the record on appeal. The reason they were not in class together, as also shown on pages 788 and 799 to 800 of the record on appeal, is because AR, the male student, was a special education student, and DS, the female student, was a general education student. That is another reason that after the district became aware of this incident, not because it was reported by appellant, because it was not, it was reported by another student, they had to go, even though he was immediately sent home on the bus that day and suspended for the next three days pending the investigation, the manifestation determination review had to be conducted by the special education committee to move his placement to the alternative education placement and place him in DAEP, the disciplinary alternative education, as a result of this incident. But I would like to go back to the issue of whether it was consensual sexual activity. As I just mentioned... I don't think you need to belabor that, ma'am. Yes, Your Honor. I think the evidence clearly shows, and the video shows, at 785 of the record, that there was more than an hour and a half of interaction between these students. You know what? I mean, I sort of agree with Judge Graves. To me, it doesn't matter whether it was consensual or not. The issue is whether the school district had knowledge and could draw an inference that this kind of disgusting behavior was going to be going on among sixth graders. Yes, Your Honor. And on that question, I think the district court's opinion is clear that there is nothing in the summary judgment evidence which shows that the school district was aware of anything that would cause them to jump to a conclusion or have any idea that this behavior could occur. Regarding appellant's claim that the school should have been aware because A.R. was at the intramural game, the summary judgment evidence is uncontroverted, that when Mr. Hunt saw A.R., A.R. was inside the gym and that he instructed A.R. to go sit in the bleachers and wait for his ride home. He knew A.R. lived more than two hours, two miles from the school, and therefore he did not want to require him to walk home. When Ms. Bland, the principal, saw A.R. in the hallway outside the gym, and it's also reflected in the video at page 785 of the record, she also questioned A.R. about being at the school and told him that he needed to get his ride and go home. But it is clear that appellant was not in the area at the time, and Ms. Bland never saw her. The uncontroverted summary judgment evidence establishes that, in fact, Mr. Hunt did not see D.S. at the school that afternoon at all, and he certainly did not see her at the intramural games, in the gym, or in the hallway. That's in the record on appeal at page 793. Ms. Bland also did not see appellant in the hallway or at the intramural games that day, and that's in the record at pages 802 to 803. So there was nothing by which these officials should have or could have known that there was any threat posed by A.R. to D.S. when they did not even see them together, they had no classes together, and D.S. had previously been told if she ever received any unwanted attention or was ever uncomfortable in any way to please speak with the female counselor, the assistant principal, or any other adult, and she said she did. Her own testimony was that she never reported anything to the school district, and the one student who did report this incident the following day said that the two students were boyfriend and girlfriend, as did the other two students who were there. It is clear from the record that these students were never together on the campus after this, and there was nothing that should have alerted the school district to act in any way other than what they did. For all those reasons, Your Honor, the district court's decision rendering summary judgment in favor of the school district should be affirmed. Thank you, counsel. Rebuttal. Yes, thank you, Your Honor. Whether or not my client was aware of the intentions of A.R. is completely irrelevant. If a student took a gun to school and shot somebody, would whether or not that person was aware that he was going to be shot make a difference? I don't think so. So her knowledge of his intentions has nothing to do with the school's knowledge of his intentions, and they obviously were aware of his intentions because he made them very explicit. With respect to notice, I don't know how many incidents the school would need. How much notice does it take? He wrote two specific letters saying, I am going to do these things to you. Counsel, you keep saying that, and I don't really want to quarrel with you about this letter, but you interpret the letter as a threat, as a this is what I am going to do. I read those letters, painfully, but I read those letters, and they do in fact have this is what I want to do. Are you agreeing to this, yes or no, and then a box to check. So whatever you make of the letters, you'll agree that the letters are subject to interpretation. Your interpretation is it's a direct threat. Well, my interpretation is that it's an expression of intent. Some of the expressions do say, do you agree to do this with me, yes or no, with boxes. Which could be interpreted to be an expression of desire. Yes. Some of them don't. Some of them don't have a yes or no. Some of them say, as a matter of fact, the second letter says, I want to do this today. It uses literally the word today, talking about I believe it's anal intercourse. I remember what it's talking about, and I agree with you. It says I want to do this today. You interpret that to mean I'm going to do this to you today. All I'm saying is what you characterize as a threat. I read that graphic language. Well, Your Honor, and I'm not saying that he was saying it in terms of I'm going to harm you, you know, in that kind of a context. I'm saying that it is an expression of his intention. Whether it's with her cooperation or without her cooperation, it is an expression of his intention to engage in that kind of conduct. And even if it's just an expression of his desire, certainly you have a child with a very, very long history of troubled behavior. It's not something that can be just passed off as, oh, this is just a, you know, middle school kid. I'm agreeing. I mean, I read the letter. It is very troubling, and it's even more troubling that it was authored by a 12-year-old. It is unbelievably graphic and reprehensible, but you're asking us to accept that the letter constituted a direct threat. I'm asking the court to consider that the school should have contemplated that, not accepted it as a direct threat necessarily, but at least contemplated that it might be a direct threat. Certainly, you know, the parent should be informed. That should be at least a consideration because if it is a direct threat, it's going to result in a sexual assault, which is what happened. And I take a little bit of issue with the notion that this was not a serious infraction or a potentially serious infraction. A sexual assault is a very serious infraction, and a potential sexual assault is a very serious infraction. It's not something that, you know, that should be considered a, you know, minor infraction that can be dealt with in school suspension. There are a number of cases that we list in our brief where courts said that even though a school took some action, it was not reasonable action under the circumstances, and therefore it constituted deliberate indifference. I also want to note a couple of things. First of all, Mr. Hunt, the vice principal, admitted that he believed the first letter was addressed to my client. So there's no question about that. It's in the record. At the volleyball game, the school did not follow its own disciplinary policies. Neither the vice principal nor the principal followed the school's own policies that required them to make A.R. leave the premises because he was not supervised and did not belong there at the time. To say that they did not, that they were unaware that this could happen, I think, is a very disingenuous argument. They knew that she was on the volleyball team. They knew he was unsupervised, and they knew of the threat. All of those things should have led them to take further action. Thank you. Thank you, counsel. That concludes the matters that are on today's oral argument docket. We will recess for the day.